This video was made in Cooperation with the U.S. Embassy in the Philippines.  I am William Taylor from South Dakota, appearing here today on behalf of Tetra Tech in a case brought by George Engasser. The case arises from a third-party complaint filed by Tetra Tech against the Meta Chupa tribe over a contract that was prepared on a California form in support of the reclamation of the Camp Fire that took place in 2018 that burned nearly 200,000 acres of Northern California properties, including ancestral lands of the Meta Chupa tribe. It's important to note that we are talking about ancestral lands. We should distinguish those ancestral lands from a reservation or tribally-owned property or land held in trust for the government. California required that Tetra Tech, who had contracted to reclaim the damaged property, hire an Indian tribe to provide monitors for cultural resources important to the tribe that are found in the reclamation project, typical of the Section 106 requirements of the National Historic Preservation Act. Tetra Tech contracted with the tribe, used a California form contract, wasn't particularly negotiated. The principal negotiations had to do with the scope of the work as opposed to the terms of the contract. The important part of the contract is that it contained a dispute resolution provision. It's the longest single section of the contract. The dispute resolution provision requires that, before any other remedies provided by law are pursued, the parties must meet and confer to determine if they can reconcile their differences. The issue before the court... In the contract is language that says that if litigation occurs, that the tribe has forfeited its sovereign immunity, because it seems to have a sentence that says the exact opposite. We believe, Your Honor, that the dispute resolution provision itself is a waiver of the tribe's sovereign immunity by the very recitations that are contained in the contract. Counsel, I have trouble with that argument, because this is a provision, which in some form or another is standard in a lot of contracts, which says you have to try to resolve something informally before you go to litigation. This is a very specific provision, and then it says any court with a competent jurisdiction shall have the authority to enforce this provision and determine whether the meet and confer process has been satisfied. But there's nothing in that provision which waives sovereign immunity as to underlying disputes. How do you read the language of this provision and the sort of the penultimate sentence, which I've just talked about, as constituting a waiver of this tribe's sovereign immunity for actual litigation? I don't think that that single sentence that you read, Your Honor, it has to be read in context with the rest of the dispute resolution provision. There are repeated references within the dispute resolution provision to other remedies provided by law prior to commencing litigation. There's a discussion of whether or not the evidence that's offered in the dispute resolution process is admissible in a subsequent legal or equitable proceeding. There's discussion... And that is as it is, but the type of provision that you would need here, I think, is that something that says and the tribe waives its sovereign immunity for any subsequent litigation occurring after the meet and confer process has concluded in accord with this provision. And I just don't see anything like that in here, even without considering the provision in here that says the tribe doesn't waive its sovereign immunity. Judge, the cases, including C&L Enterprise, that have looked at the issue of whether or not a particular provision, a contract constitutes a waiver of sovereign immunity, all say that there are no magic words required, that you don't have to... But like, for example, the Miller case says the inclusion of a mediation provision to resolve disputes does not evidence a clear and explicit waiver of immunity. I mean, how do you get around the Miller case, even if I were to agree with you that the language in the ADR provision is in some way ambiguous? How do you get around Miller? Well, the Miller case was a mediation case, and the mediation provision in the Miller case was clearly voluntary, was clearly non-binding, as opposed to the dispute resolution provision in this case, which is a precursor to litigation. The Miller case, I think the Miller case is entirely an opposite. The Miller case was a tobacco case, and it had a long history behind it, and the clause that was chosen, the mediation clause that was chosen, was taken in a narrow context. There was no enforcement provision in the Miller case that started and stopped with you will mediate, as opposed to this instance, where it starts with you will attempt to resolve your dispute, and if you are unsuccessful at resolving your dispute, then you may proceed to litigation to pursue those other remedies provided by law. The case law, the reference in the case law is that in civil proceedings, as opposed to legislative proceedings, there only needs to be a finding that the waiver is clear. As value construction, which was my case, said almost 30 years ago, no magic words are used in the contract. Well then, what is the language in the contract, reading the contract, that says nothing here is a waiver of the tribe's sovereign immunity? What does that mean? Is that surplusage? No, I don't think it's surplusage at all. Tribal sovereign immunity does not start and stop with litigation. Tribal sovereign immunity reaches a whole wide range of other areas. Tribal sovereign immunity... But it says nothing herein, meaning the contract, shall be construed as a waiver of sovereign immunity on, I think it appears multiple places, the contract's multiple places in the record, I'm looking at ER 344, but nothing herein shall be construed as a waiver of sovereign immunity. So even if I were to agree with you on the meet and confer clause, doesn't this trump that? No, I don't think so. If that single sentence is intended to mean that there is no waiver of sovereign immunity, period, in any form or fashion, then it would render the meet and confer clause essentially surplusage. And it's your obligation, our obligation, every court's obligation to read a contract from front to back, top to bottom, and try and reconcile all of the clauses. The way you reconcile the sovereign immunity clause in this particular contract is you What the tribe's trying to say is we don't waive our section 106 privilege, which is tied directly to the scope of this contract. That's 106 in the National Historic Preservation Act, which requires that the government-to-government relationship with respect to funerary objects, culturally significant objects, found in the course of significant governmental action. So to read the contract in context, you have to say the waiver of sovereign immunity doesn't reach to 638 contracts, doesn't reach to 106 issues, doesn't reach to 280 rights, doesn't affect our laws and ordinances, our form of government, our blood quantum, our membership. Yeah, so there was nothing that prevented you from having in the contract specific language that says, for example, in the indemnity clause, that the tribe waives its sovereign immunity to have disputes arising under this clause resolved in any court of competent jurisdiction including. Right? Had it said that, we wouldn't be here. Right, but there was nothing that stopped you from including that or trying to include it. I suppose that Tetra Tech could have tried to negotiate that, but the fact is that that specific language isn't in the agreement. What does the record say about whether or not Tetra Tech, in other contracts, sought the removal of the non-waiver language? Does it say anything about that? No, there's no evidence on that subject in the record, Your Honor. And I personally would find, be very surprised to find that because this form agreement was agreed on between the tribe and the state of California. California hired Tetra Tech and said, by the way, as part of our master agreement, you will hire the tribe and you will use this agreement. The points of negotiation are not in the text of the agreement itself. The points of negotiation typically are in the back half of the agreement, which is the scope of the work. Are you saying that it's in the record that California required you to use this form unchanged? No, I can't say that. Everything is negotiable, but my understanding is that California said, here's the agreement, use it. So, I'd like to reserve two minutes of my time for rebuttal, but I would say that the C&L Enterprise case, Citizen Band of Pottawamie Indians, it says very clearly that the tribe, the contract must only clearly constitute a waiver of sovereign immunity and that the waiver of sovereign immunity can be by implication from the contract. I think the four corners of this contract, reading the dispute resolution clause in association with the sovereign immunity clause, quite clearly say that through the dispute resolution process, the tribe has waived its right to assert sovereign immunity. Otherwise, what's the point of the contract? As the Supreme Court said in C&L, this isn't a game. It's a very serious business and the purpose of contracts is to effectuate a business relationship and the business relationship must be honored. One element of that is the right to go to court to enforce it. Otherwise, it merely becomes a game. Thank you and I'll reserve the remainder of my time. All right. We'll give you two minutes and we'll now hear from Neapoli. Thank you. Good morning. May it please the Court. I am Sheila Lamb Carroll. I represent Mechoopda in this matter. The district court here made the proper decision with respect to granting the motion to dismiss. There is a clear statement, as has already been discussed, in the contract that says waive sovereign immunity. That clear statement appears two places. It appears in ER 342 through 351 in Section 4 of the agreement, Part D. There's a very clear statement that says nothing herein shall be construed as a waiver of sovereign immunity. So, counsel, as I understand it, the tribe's position is because of the way this contract is written, even if they violated the contract, there's no remedy at all for the plaintiff. Is that right? There's no place plaintiff can go to get any relief? Well, your Honor, I disagree with that. There was a place. Okay, so where can plaintiff go to get relief? Today or at the time the discussion started. There was a dispute resolution clause for a discussion, which ended pretty abruptly. There's a discussion, but you have to have the discussion, but you don't have to resolve anything, right? Correct, your Honor. So past that, there is no resolution. Okay, so basically the tribe could sue them for breaches of contract, right? True if the tribe needed to do that. But there's no place they can sue the tribe for breaches of contract. So basically the tribe has an indemnity for anything the tribe does wrong because of the non-waiver of sovereign immunity. That is true. There's certainly defenses they have against Mr. Engasser and against plaintiff, and there are things they can do, but they are not allowed to sue Mechoopda. There is clearly not a waiver. The Kiowa case addressed this. Justice Kennedy made a statement in that case that said that the waiver of, you can't have a tribal waiver for sovereign immunity based on perceived policy concerns or inequities. Actually, he didn't even use the term perceived. He said, based on policy concerns or inequities for sovereign immunity, that that can't happen. And he said that that's a matter for Congress, and it's important to keep that issue. So the tribe can violate this contract with impunity and then just say, well, too bad on you. That's essentially your position. Is that correct? Not exactly, Your Honor. Very close. They can't just say, too bad. There is... Well, yes, they can. If there's no court that they can be sued in, none whatsoever, then they can do whatever they want. They can say, yeah, that's what the word's on the page. Who cares? I'm not doing it that way. So, too bad. And your answer is, that's it?    I'm not doing it that way. So, too bad. And your answer is, that's it? That's a matter for Congress. at their obligations and just fold their hands and say, too bad. That's how you want us to read this document, right? That's how the document reads very clearly. Now, certainly, that wouldn't be a good business decision for Mechupta. Sadly, there have been... No, it definitely wouldn't be a good business decision and would certainly mean that people would be exceedingly reticent to sign contracts with the tribe in the future if that were the attitude. But, I mean, if you're right about the law, that's a problem not for us, but it may well be a problem in the future for the tribe. But not necessarily. There certainly was opportunity to draft a different type of contract. Ms. Kamara, who's very experienced, who was the contract administrator, had an opportunity. She crafts her declaration rather cleverly, and that's found, let's see, 292 of the record. And she states that they weren't allowed to change the scope of work, but nothing in her declaration speaks to the rest of the agreement and what they couldn't change. So they very well could have inserted other clauses and done some things with the contract. Let me ask you a question. Suppose the tribe had declined to participate in a meet-and-confer on this subject, and the Tetracheck brought a suit to enforce the dispute resolution provision. Would there be, in your view, sovereign immunity against that suit? Yes, there would be, and we would have brought the same motion to dismiss. But again, it would be a very... It clearly said... Now, that seems inconsistent with C&L, because it says any court with competent jurisdiction shall have the authority to enforce this provision and to determine if the meet-and-confer process has been satisfied. That is clear and unambiguous that a court has the power to force the parties to comply with it. It doesn't say one or the other. It just says court of competence or the similar phrase that was at issue in C&L. Why isn't that intrinsically a waiver of sovereign immunity to that extent? Well, our case is very distinguishable from C&L. First of all, the C&L facts in that case, there wasn't an agreement that said we do not waive sovereign immunity, and that's important. There was also an arbitration clause that was pretty specific. It referred to rules. It referred to AAA rules. It referred to consent and choice of law in Oklahoma. So it was a very different clause. The distinctions in C&L are actually discussed in the DeMontigny case, which is more similar to our case, at footnote 5. So then, counsel, your position is, if this were at issue here, wouldn't the sentence Judge Collins read meant was the tribe can take advantage of this clause to force the other side to participate in a meet and confer, but the other side can't force the tribe through  I may have misunderstood Judge Collins' question, but, so, could Tetra Tech force the tribe to participate in a meet and confer? You could take advantage of this, but they couldn't. Well, they, in fact, did ask for a meet and confer, and we granted one, but if we did not... No, but I'm talking about the specific sentence about going to court to enforce it. The tribe could use that sentence, but they couldn't. It could, and there would be instances of great import where they may have needed to do that. This is a project that involves... But, counsel, that's not the question. The question is, does that phrase waive their immunity to suit for the meet and confer? No, it does nothing waive their sovereign immunity. It's very clear. So, the appellant in this case could not, in fact, go to court to make them meet and confer? Well, we would not bring it. No, but could Tetra Tech do that? No, because the court does not have jurisdiction over Mechupta. It hasn't been waived. And not even for the meet and confer? Not even for the meet and confer. You said on page 24 of your brief, you said the agreement could at best suggest only where a suit may be brought and whether the meet and confer process has been satisfied. Any court with competent jurisdiction. But it does not expressly or pliantly address whether a suit may be brought, or the particular body of law that may hear the dispute. But doesn't the concession that it addresses where a suit may be brought, a concession that the suit contemplates that it is consenting to litigation? No, and the where here is way too vague for one thing. It doesn't give a venue. It doesn't give a choice of law. It's a very vague reference. Well, the meet and confer is described as a process to be followed, quote, prior to commencing litigation, close quote. So it expressly contemplates that this is a windup for litigation. It does, and there could be instances in which Mechoopda would need to bring litigation. Oh, so we're back to this is only for your benefit, even though it's written for both parties, it actually is only for the tribe and not for the other side. There is no waiver of sovereign immunity in this case, so that's correct. If that clause was not there, it would have changed everything. The clause is there. It's very important. It's actually there in two places. It also is in the scope of work, Section A. And so, I mean, as a theoretical matter, at least, with a contract like this, the way the tribe is reading it, if there were a breach by the other side and the tribe tried to enforce it in a court of competent jurisdiction, the court could say, there's no consideration, there's no mutuality here, so there's no contractual obligation because it's one-sided. So I mean, in the future, that position could seriously hurt the tribe's potential rights to enforce a contract like this. Well, there's still, I suppose it depends on the nature of the breach, there's still consideration. I mean, there's work performed, there's payment for the work, so it depends on the actual factual case, but this is a very strong policy and Congress has written it that way and it's a very important one, too. And particularly in this case, when you're dealing with a cleanup that can deal with ancestral property and remains and tribal artifacts, there may be an instance in which Mechoopda would have needed to bring an action to stop work if that work hadn't stopped. So it's of prime importance and it's stated very clearly twice, so it's difficult to understand how this is ambiguous when the clause, just a few sentences before the dispute resolution clause, states that nothing is construed as a waiver of sovereign immunity. And it's a dispute resolution clause, it's not a dispute guarantee. I mean, I understand your argument, but nobody would ever enter into a contract like this if this is what everybody knew it meant, because who would ever enter into a contract where only one side could enforce their rights? But I mean, the contract says what it says and the implications of that are what they are, but I can't imagine anybody who would ever voluntarily enter into a contract like that if only the other side got to enforce their contractual rights and they had no right to enforce their contractual rights. Well, the record here does in fact have the fact that a meet and confer process at least started. It was brief, but it took place. I can imagine that the meet and confer process, well, you can't sue us, we're done talking to you. Well, that wasn't the entire conversation and it certainly could have been more of the conversation. So that's an abbreviation of it. But would you agree that if the tribe had filed any suit against Tetra Tech that the tribe would then open itself up to counterclaims? Yes, if the tribe actually brought itself to court, it could potentially open itself up to other claims. The cases that have been cited by counsel are all distinguishable. This is a clause that doesn't have the level of detail that the C&L case has or the Rosebud case. This is more like the DeMontigny case and as I started to say earlier, there's a footnote five in DeMontigny that does a good job of distinguishing C&L in great detail and those facts and the way that's distinguished are very similar to the case here. So it's important to look at that. The underlying court did make the proper decision and this court hopefully will see that and uphold that decision. Are there any further questions? No, thank you. Thank you. I'll submit on my brief. I'm down to my last 12 seconds, so I'll leave it here. Thank you very much for your time. All right. And the appellant has two minutes. Thank you, judges. This is a $33 million contract. Provision in the contract says, sets up that there'll be an hourly fee paid for each tribal monitor for every hour that they perform. The tribe contracted that out to somebody else and kept half the money out of the contract. They paid $50. They kept $129. There's a provision in the contract that says the tribe won't violate the law, that it'll follow the laws that are applicable. One of the laws that is applicable is overtime, wage and hour, all the elements of that, and the tribe ignored it. They didn't pay those charges, hence the Engasser lawsuit.  Sure we want to talk about this. The tribe said, okay. They met and conferred, and at the end of the meeting, confer, the tribe said, too bad. End of story. Now, I ask this question. Is this contract intended to be a trap for the unwary? I don't think so. It has a provision in it that says that the tribe will indemnify Tetra Tech for any tort-related things, for any violations of the contract. If there's no enforcement mechanism, why is there an indemnity clause? Now, there's no tribal court, so questions of jurisdiction are, where do you go? If you can't go to tribal court, if you want to enforce this contract, you go to federal court. In this case, we ended up in federal court through ancillary jurisdiction, which is perfectly appropriate because there is a provision in the contract that says that a court of competent jurisdiction can hear these disputes. The tribal enterprise, who we sued, is the tribe. The tribal enterprise is an unincorporated association. Why don't you conclude? In conclusion, I will say that C&L says that there has to be a clear statement of a will. It doesn't require explicit words. There is a clear statement of the waiver in the dispute resolution clause. In this case, sovereign immunity was waived for the purposes of this contract, which is logical and sensible under its terms, and we request that you enforce that. Thank you. All right. We thank counsel for their arguments, and the case just argued will be submitted. We will now turn to the final case on the argument calendar.
judges: BENNETT, COLLINS, Foote